UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

M.M. and M.M., individually and on behalf of G.M., and G.M.,

Plaintiffs,

- against -

NEW YORK CITY DEPARTMENT OF EDUCATION; NEW YORK CITY BOARD OF EDUCATION; and MEISHA PORTER, in her official capacity as Chancellor of the New York City Department of Education,

Defendants.

**MEMORANDUM DECISION AND ORDER**

21-cv-3693 (BMC)

**COGAN**, District Judge.

The parties have cross-moved for judgment on the pleadings in this Individuals with Disabilities Education Improvement Act ("IDEA") case, in which plaintiffs seek reimbursement for their unilateral educational placement for the 2018-2020 school years, as well as declaratory relief for defendants' alleged violation of Section 504 of the Rehabilitation Act and a compensatory education award. An Impartial Hearing Officer ("IHO") and State Review Officer ("SRO") have considered and rejected plaintiffs' arguments.

Upon review of the record and mindful of the weight I owe their educational policy determinations, I find that certain portions of the IHO's and SRO's decisions were not well-reasoned or supported by the record. Specifically, I overturn their conclusions that plaintiffs' unilateral placement was not appropriate. In essence, the unilateral placement got reasonably close to the placement recommended in plaintiffs' individualized education plan ("IEP"), considering that defendants could neither offer nor recommend anything remotely similar to the

requirements of the IEP. Therefore, I grant plaintiffs' request for tuition reimbursement for the 2018-2020 school years. I uphold the IHO's and SRO's decisions denying plaintiffs' Section 504 claim and motion for compensatory education.

## BACKGROUND

### I. Educational

Plaintiffs bring this action on behalf of their minor child, G.M., alleging that defendants were required to fund G.M.'s education at the Nord Anglia International School ("NAIS") for the 2018-2019 and 2019-2020 school years because the Department failed to provide her with a free appropriate public education ("FAPE").

Defendants' Committee on Special Education ("CSE") classifies G.M. as a student with autism; she has also been diagnosed with an autism spectrum disorder and ADHD. She comes from an English/Spanish bilingual home and her primary language is Spanish. Her school district convened an IEP review in 2017, and the CSE recommended that G.M. attend a 6:1+1[1] "bilingual Spanish Special Class in a New York State Approved Non-Public School – Day, with the related services of occupational therapy and speech-language therapy." The district further recommended that G.M. attend a bilingual Spanish district-run "Special Class 12:1+1" in District 75 as an interim measure until defendants could secure such a placement. Defendants did not recommend a permanent placement prior to the 2017-18, 2018-2019, or 2019-2020 school years. They did recommend an interim placement at an English-language District 75 public school just before the start of the 2017 school year, but the parties agree that that school would not have provided G.M. with a FAPE. The parents notified defendants that they were unilaterally placing her in a private school and would seek tuition reimbursement.

---

[1] A ratio of 6 students to 1 teacher, with 1 aide.

For the 2017-2018 year, the parents sent G.M. to NAIS, where she was a kindergartener (in NAIS terms, a Year I student).[2] G.M. repeated Year I at NAIS for the 2018-2019 school year. On May 1, 2019, the CSE convened to develop another IEP for G.M., which culminated in an IEP that recommended essentially the same placement and related services as the 2017 IEP. The parents notified defendants of their intention to re-enroll G.M. in NAIS for the 2019-2020 school year and seek reimbursement, as defendants again failed to place G.M. in an appropriate school. G.M. was a Year II student at NAIS for the 2019-2020 school year.

The parties agree that NAIS did not provide G.M. with the exact services that the CSE recommended for her (namely, speech-language therapy and occupational therapy), nor did it offer Spanish-only or bilingual instruction. They dispute whether NAIS provides "special" education. Defendants argue that NAIS provides "personalized learning," which includes "differentiated activities," but that their educational program "is separate and distinct from special education." Plaintiffs contend that NAIS was an appropriate educational placement, even though the school did not formally provide Spanish-language instruction or the IEP's related services, because it provided G.M. with a functionally equivalent education. Similarly, although plaintiffs recognize that NAIS is a general education program (as opposed to a formal special education program), they argue that it was nevertheless an appropriate, "specially designed" education.

Plaintiffs describe several aspects of G.M.'s education to demonstrate it met her needs. NAIS uses the English National Curriculum, which is a skills-based program that utilizes pedagogical techniques such as "repetition of previously learned skills." NAIS provides "differentiated education," which means that the curricula are tailored to students' unique

[2] The 2017-2018 school year is not at issue here, as the parties entered into a settlement agreement in which defendants agreed to retroactively fund G.M.'s tuition for that year.

functioning levels. The school uses two behavioral plans that plaintiffs claim "have proven to be effective for educating students with disabilities at NAIS." The plans include multisensory instruction and fine motor skills training.

For the 2018-2019 school year, G.M. was in a class of 12 students. One other student in her class was diagnosed with autism. Ms. Wright taught the class and Ms. De Leon, who was fluent in Spanish, served as the learning assistant. Ms. Wright is an experienced teacher from the United Kingdom, but is not certified in New York State. G.M. received social skills instruction from the Head of Inclusion (Mr. Hitchen), who is similarly qualified in the United Kingdom but not New York State. Both Ms. Wright and Mr. Hitchen have special education experience.

For the 2019-2020 school year, G.M. was in a class of 11 students, which was broken up into smaller groups of four students or fewer. Like the prior year, one other student in her class was diagnosed with autism. Ms. Moffat (also certified in the United Kingdom but not New York) taught the class and Ms. Choi served as the learning assistant. Spanish language support was provided by Ms. Moffat (who speaks Spanish) and another teacher (a native Spanish speaker), with additional support from Ms. De Leon, who was stationed in the next room. Mr. Hitchen taught a class that focused on "emotional intelligence and social skills." Ms. Moffat also kept a Google Home device for translation "in the rare instances no support from a Spanish speaking staff member was available."

## II. Procedural

Plaintiffs filed due process claims against the school district for failing to provide a FAPE for the 2018-2020 school years, seeking tuition reimbursement for that period. The IHO found that although the district failed to provide G.M. with a FAPE (as defendants have conceded), plaintiffs did not demonstrate that NAIS was an appropriate placement. Therefore, the IHO

denied the reimbursement request. Specifically, the IHO found that NAIS was not appropriate because it did not provide G.M. with a bilingual program, special education, or the related services in her IEP. The IHO also found that plaintiffs failed to demonstrate that defendants violated Section 504 and, because plaintiffs unilaterally placed G.M. in a private school, plaintiffs were not entitled to compensatory education with respect to the IEP's related services.

The SRO affirmed the IHO's decision on the same grounds, finding that NAIS did not provide an educational experience that was sufficiently tailored to G.M.'s Spanish and special education needs, and rejected plaintiffs' reimbursement, Section 504, and compensatory education arguments. Both the IHO and SRO recognized that G.M. made academic progress at NAIS, but nevertheless found that plaintiffs had not established it was an appropriate placement.

Plaintiffs appealed those decisions to this Court and have moved for judgment on the pleadings, seeking to overturn the IHO's and SRO's decisions. Defendants have cross-moved for judgment on the pleadings, asking the Court to uphold those decisions.

## DISCUSSION

### I. Tuition Reimbursement

#### A. Legal Framework

New York parents who "believe an IEP is insufficient under the IDEA . . . may challenge it in an 'impartial due process hearing,' before an [IHO] appointed by the local board of education." Grim v. Rhinebeck Cent. Sch. Dist., 346 F.3d 377, 379 (2d Cir. 2003). When parents challenge an IEP and unilaterally place their children in private school, the IHO applies the Burlington/Carter test to determine whether tuition reimbursement is appropriate: "(1) the DOE must establish that the student's IEP actually provided a FAPE; should the DOE fail to meet that burden, the parents are entitled to reimbursement if (2) they establish that their

unilateral placement was appropriate and (3) the equities favor them." M.W. ex rel. S.W. v. New York City Dep't of Educ., 725 F.3d 131, 135 (2d Cir. 2013) (citing Sch. Comm. of Town of Burlington v. Dep't of Educ., 471 U.S. 359 (1985), and Florence Sch. Dist. Four v. Carter, 510 U.S. 7 (1993)). "[A] parent or person in parental relation seeking tuition reimbursement for a unilateral parental placement shall have the burden of persuasion and burden of production on the appropriateness of such placement." N.Y. Educ. Law § 4404(1).

IHO appeals are heard by an SRO. C.F. ex rel. R.F. v. New York City Dep't of Educ., 746 F.3d 68, 73 (2d Cir. 2014). Parties may subsequently challenge SRO determinations in federal court. 20 U.S.C. § 1415(i)(2). When a party challenges an SRO decision, "the district court shall receive the records of the administrative proceedings . . . and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." Id.

Federal courts reviewing SRO decisions conduct an independent review of the record, while affording appropriate deference to the IHO and SRO decisions:

> [T]he role of the federal courts in reviewing state educational decisions under the IDEA is circumscribed. A reviewing court must engage in an independent review of the administrative record and make a determination based on a preponderance of the evidence. Such review, however, is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review. To the contrary, federal courts reviewing administrative decisions must give 'due weight' to these proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy. While federal courts do not simply rubber stamp administrative decisions, they are expected to give due weight to these proceedings.

A.K. v. Westhampton Beach Sch. Dist., No. 17-cv-866, 2021 WL 6776236, at *11 (E.D.N.Y. Dec. 22, 2021) (cleaned up), aff'd sub nom., Killoran v. Westhampton Beach Sch. Dist., No. 22-cv-204, 2023 WL 4503278 (2d Cir. July 13, 2023). As the Supreme Court has held, a district

court's review is "by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley, 458 U.S. 176, 206 (1982). However, the deference owed to the IHO and SRO decisions is not absolute, and the extent to which courts must defer to their decisions "will hinge on the kinds of considerations that normally determine whether any particular judgment is persuasive, for example whether the decision being reviewed is well-reasoned, and whether it was based on substantially greater familiarity with the evidence and the witnesses than the reviewing court." M.H. v. N.Y.C. Dep't of Educ., 685 F.3d 217, 244 (2d Cir. 2012).

"The issue turns on whether a placement – public or private – is reasonably calculated to enable the child to receive educational benefits." Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 112 (2d Cir. 2007). As the Second Circuit has reasoned:

> No one factor is necessarily dispositive in determining whether parents' unilateral placement is reasonably calculated to enable the child to receive educational benefits. Grades, test scores, and regular advancement may constitute evidence that a child is receiving educational benefit, but courts assessing the propriety of a unilateral placement consider the totality of the circumstances in determining whether that placement reasonably serves a child's individual needs.

Frank G. v. Bd. of Educ. of Hyde Park, 459 F.3d 356, 364-65 (2d Cir. 2006) (cleaned up).

**B. Appropriateness of Unilateral Placement**

Plaintiffs contend that the IHO and SRO did not properly consider G.M.'s progress at NAIS and that, if they had, they would have deemed it an appropriate placement. The IHO and SRO both held that, although G.M.'s progress at NAIS provided some indication that her placement had been beneficial, it was not sufficient to render the placement appropriate.

A district court decision can overturn the SRO's non-reimbursement determination where the SRO did not consider such improvements. For instance, in Frank G., the Court noted that the

SRO did not have the opportunity to consider evidence that the student's test scores and grades had improved, including a "phenomenal" score on the student's standardized testing. Id. at 362.

Here, by contrast, G.M.'s academic record was fully before the IHO and SRO. This is important, as "[a]n assessment of educational progress is a type of judgment for which the district court should defer to the SRO's educational experience, particularly where, as was the case here, the district court's decision was based solely on the record that was before the SRO." M.S. ex rel. S.S. v. Bd. of Educ. of the City Sch. Dist. of the City of Yonkers, 231 F.3d 96, 105 (2d Cir. 2000), abrogated on other grounds, Schaffer ex rel. Schaffer v. Weast, 546 U.S. 49 (2005).

Both the IHO and the SRO analyzed G.M.'s academic progress. This includes her report cards, qualitative progress reports, and oral testimony by her teachers. Although both the IHO and the SRO recognized that these metrics demonstrated some degree of academic progress, they found that such progress did not outweigh other considerations that cautioned against a finding of appropriateness. See Gagliardo, 489 F.3d at 115 ("a child's progress is relevant to the court's review . . . [but] does not itself demonstrate that a private placement was appropriate"). Specifically, the SRO agreed with the IHO's finding that there was insufficient evidence of specialized education that was tailored to G.M., including her special education and Spanish-language needs.

The SRO considered several educational benefits produced by NAIS's pedagogical methods, including its small class size and "inclusion model," which the SRO described as a method that "focuses on assessing individual student needs without a strict delineation between general education needs and special education needs." But the SRO nevertheless determined that those "environmental advantages and amenities" were of the variety that would benefit any

student. In other words, the SRO felt they were not "specially designed to meet the unique needs of" the student. See Frank G., 459 F.3d at 365. On this point, defendants argue that "even where there is evidence of success, courts should not disturb a state's denial of IDEA reimbursement where . . . the chief benefits of the chosen school are the kind of educational and environmental advantages and amenities that might be preferred by parents of any child, disabled or not." Gagliardo, 489 F.3d at 115.

Chief among the ISO's and SRO's concerns was NAIS's failure to provide Spanish-language classes, or at least bilingual (English and Spanish) classes, despite the fact that G.M.'s IEP called for placement in a Spanish special class with speech-language therapy. The IHO and SRO considered the Spanish assistance that G.M. received, including her Spanish-speaking teacher and aide, and determined that the assistance was not sufficient to satisfy her language needs, since her general education classes were still taught monolingually in English.

The IHO and SRO similarly found that NAIS was not an appropriate placement because it did not provide G.M. with her IEP's related services of speech-language and occupational therapy, which they thought necessary to help with her language delays and difficulties with functional tasks, such as handwriting.

Plaintiffs argue that the IHO and SRO erred by holding that NAIS was not an appropriate placement vis-à-vis G.M.'s IEP. They emphasize that the standard for determining the appropriateness of a parent's unilateral placement is more relaxed than when determining whether a district has provided the student with a FAPE. The Circuit has made that clear:

> To qualify for reimbursement under the IDEA, parents need not show that a private placement furnishes every special service necessary to maximize their child's potential. They need only demonstrate that the placement provides educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction.

Frank G., 459 F.3d at 365 (cleaned up). Plaintiffs claim that the IHO and SRO held plaintiffs to an improperly strict standard by requiring them to have placed G.M. in a program that was virtually identical to the one envisioned by her IEP.

Plaintiffs overstate the point, but not by much. Both the IHO and SRO cited Frank G. for the above proposition and considered (at least nominally) the possibility that NAIS provided services that partially addressed G.M.'s needs, despite the fact that the educational program was not formally consistent with her IEP, ultimately deciding that those attributes were not sufficient to establish the appropriateness of the unilateral placement. Thus, their decisions leave open the possibility that they would have found a placement appropriate even if it deviated from the IEP to some degree, albeit a lesser degree than NAIS's deviation from G.M.'s IEP. However, they required too precise of a fit, especially given the circumstances of this case.

Namely, the IHO and SRO did not afford proper weight to defendants' failure to recommend any placement whatsoever that would have satisfied G.M.'s IEP. In so doing, the IHO and SRO ignored a fundamental unfairness at the core of this case. Defendants acknowledge that G.M. was entitled to special education in a Spanish nonpublic school with certain related services. Defendants could not find a school for G.M. that came close to satisfying those conditions, so her parents found one that satisfied many, but not all, of those conditions. Assuming no school existed that could satisfy G.M.'s educational needs as laid out in her IEP – a reasonable assumption, given that defendants never recommended a satisfactory program, even after G.M. had spent two years at NAIS – what were plaintiffs to do? Under the IHO's and SRO's rulings, plaintiffs could not receive tuition reimbursement for any school G.M. attended, as, according to defendants, there was simply no school sufficiently similar to her IEP to permit reimbursement. And, because she had just finished preschool when she received and

challenged the 2017 IEP, she could not stay at her current school (i.e., she needed to find an elementary school to start kindergarten). The SRO recognized the futility of the latter approach, as defendants offered her no suitable school at which she could "stay put."

The parties agree that G.M. needed special education (the 2017 IEP) and could not receive that education without finding a new school. Defendants admitted that they could not find a school that would provide that education. Then, once plaintiffs found a new school – as the parties agree plaintiffs had to – plaintiffs supposedly relinquished G.M.'s entitlement to her FAPE. To deny plaintiffs recovery would allow defendants to benefit from their failure to provide G.M. with an appropriate placement. Instead of requiring defendants to provide G.M.'s FAPE, they could simply fail to find a suitable program and shirk their responsibilities under the IDEA altogether.

That is precisely the outcome the IHO and SRO permitted. Although I must not substitute my "own views on educational policy[3] for those of the school authorities," it is my responsibility to independently verify their determinations. See W.A. v. Hendrick Hudson Cent. Sch. Dist., 927 F.3d 126, 143 (2d Cir. 2019); see also Mr. P v. W. Hartford Bd. of Educ., 885 F.3d 735, 748 (2d Cir. 2018) (courts must not "rubber stamp administrative decisions"). Even when the SRO and IHO agree that a placement is inappropriate, as is the case here, their decisions do not merit deference if they are not well-reasoned or are unsupported by the record. S.B. v. New York City Dep't of Educ., No. 15-cv-1869, 2017 WL 4326502, at *9 (E.D.N.Y. Sept. 28, 2017).

[3] Under the circumstances, it is not readily apparent that the IHO's and SRO's decisions about whether NAIS came close enough to satisfying G.M.'s IEP is a "policy" decision. Nor is it clear that defendants' failure to find an appropriate placement for G.M. reflected a policy decision, or really a decision of any kind. It was more a reality necessitated by the lack of educational options available to her. However, assuming *arguendo* that those constitute policy decisions, I find they were not well-reasoned and, therefore, do not defer to them.

The closest defendants came to finding a school for G.M. was their recommendation of an interim placement in a District 75 public school that, by all accounts, was not nearly able to provide G.M. with the education she required. When considering that defendants never found an appropriate private placement, it is clear that NAIS's deviations from G.M.'s IEP are not substantial enough to render the unilateral placement inappropriate. Thus, although the IHO and SRO decisions were detailed and evince a meaningful engagement with the record, their conclusions about appropriateness were not well-reasoned because they did not adequately consider plaintiffs' lack of options.

With respect to NAIS's language services, the record makes clear that the school ensured G.M. had access to resources crafted to fit her bilingual needs, including translation technology and Spanish-speaking teachers and aides, such that G.M. always had access to assistance in Spanish. Although those services are not identical to Spanish or bilingual instruction, they were sufficiently tailored to achieve the same outcome as those services: that G.M. would not fall behind because of her Spanish-language dominance. Additionally, the district's recommended placement at a District 75 public school was not in a Spanish-language or bilingual classroom. Thus, defendants tacitly agree that, at least as an interim placement, a Spanish-only or bilingual class was not a necessity for G.M.'s education.

With respect to special education, the IHO and SRO recognized that NAIS's inclusion model and small class size allowed it to tailor educational programs to each student's specific needs. Although they characterized the benefits as the type that would benefit all students, that's reading Gagliardo too narrowly. It is undebatable that an educational program that considers each student's needs and modifies instruction appropriately would benefit all students: who wouldn't want their child's school to cater to their specific needs? If that were enough to render

a unilateral placement inappropriate, then no unilateral placement could ever be deemed appropriate. What matters is not that NAIS had a general policy of tailoring instruction to students' individual needs, but the ways in which it did so for G.M. The IHO and SRO recognized several of these accommodations, including her differentiated instruction, individualized feedback, and time spent with a specialist focused on emotional and educational support tailored to her special education needs. But they erred in writing those off as general benefits, especially considering that defendants never recommended an appropriate private placement and there is nothing in the record to suggest the District 75 public placement could have provided nearly as tailored of an approach.

For the same reasons, the fact that G.M. did not receive the related services exactly as they were outlined in her IEP (occupational therapy and speech-language therapy) does not make NAIS inappropriate. The record reflects that NAIS tailored G.M.'s individualized education with these needs in mind, including through her small-group instruction in phonics, language modeling, handwriting, and fine motor skills. Further, G.M.'s progress in language and occupational tasks demonstrates that her education was "reasonably calculated to enable [her] to receive educational progress, such that the placement [was] likely to produce progress, not regression. See T.K., 810 F.3d at 877 (cleaned up). In effect, despite their claims to the contrary, the IHO and SRO made the same error as in T.K. v. New York City Dep't of Educ., 810 F.3d 869, 878 (2d Cir. 2016): "believing that the failure to include multiple services that were properly recommended in an IEP necessarily renders a private placement inappropriate, both the SRO and the IHO ultimately concluded that [NAIS] was not an appropriate placement."

Because the IHO and SRO did not properly consider defendants' failure to provide G.M. with an appropriate placement and plaintiffs' lack of any better option, I decline to defer to their

decisions regarding the appropriateness of plaintiffs' unilateral placement. Having conducted an independent review of the record, I am convinced that NAIS was specially designed to meet G.M.'s unique needs, and her academic progress confirms that the design was successful. Therefore, I overturn the IHO's and SRO's determinations and conclude that NAIS was appropriate.

### C. Equities

Because the IHO and SRO found the unilateral placement inappropriate, they did not reach the issue of whether the equities would favor reimbursement. Defendants acknowledge that there is no "equitable bar to relief." That is putting things lightly. Far from barring relief, the equities plainly favor reimbursement.

Plaintiffs' placement of G.M. at NAIS "reflects a good-faith effort to find an appropriate placement for their daughter, not just a mere preference for a private school environment." See id. at 879. It appears that plaintiffs were cooperative with the district in developing the 2017 IEP for G.M. and only opted to place her in private school when, a week before the start of a new school year, the district informed them that there was no appropriate placement for G.M. See C.L. v. Scarsdale Union Free Sch. Dist., 744 F.3d 826, 840 (2d Cir. 2014). Plaintiffs again participated in developing the 2019 IEP, despite defendants' failure to place G.M. in either 2018 or 2019. They also provided appropriate notice to defendants of their intention to keep G.M. at NAIS and seek reimbursement. See W.M. v. Lakeland Cent. Sch. Dist., 783 F. Supp. 2d 497, 504-05 (S.D.N.Y. 2011). That G.M.'s three older siblings all received IEPs and attended public schools further indicates that the parents engaged in the IEP process in good faith and only placed G.M. at NAIS because the district was unable to find an appropriate placement.

Defendants' repeated failure to place G.M. in an appropriate school is critical to the equities analysis. Had the district placed G.M. in a school that was close to meeting her FAPE and the parents decided to place her in a private school regardless, then perhaps equity would require a reduction in the reimbursement amount. But here, where the institutions tasked with providing G.M. her FAPE failed to do so, the equities do not merely favor reimbursement: they demand it.

That is not to say that defendants' failure to offer G.M. an appropriate placement gave plaintiffs *carte blanche* to place G.M. at any school of their choosing and demand reimbursement. Rather, they needed to select a school with an "educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction." Frank G., 459 F.3d at 365. As discussed above, NAIS meets the mark. Therefore, plaintiffs have satisfied the Burlington/Carter framework for their unilateral placement and defendants are required to reimburse plaintiffs for G.M.'s education at NAIS for the 2018-2020 school years.

## II. Section 504

To establish a prima facie violation of Section 504 of the Rehabilitation Act, 29 U.S.C. 794(a), plaintiffs must show that G.M. (1) is a "disabled person" under the Rehabilitation Act; (2) is "otherwise qualified" for the program; (3) is excluded from benefits solely because of her disability; and (4) the program or special service in question receives federal funding. C.L.,744 F.3d at 840-41. Plaintiffs also must establish "proof of bad faith or gross misjudgment," id. at 841, and that the violation resulted from "deliberate indifference" to a disabled person's rights under the Rehabilitation Act. Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 115 (2d Cir. 2001).

Plaintiffs' claim under Section 504 fails because they offer no evidence from which I could conclude that defendants exercised bad faith, gross misjudgment, or deliberate indifference toward G.M. and her educational needs. Plaintiffs assert that defendants' failure to establish more Spanish-language schools amounts to bad faith, but they do not "point to any concrete evidence to support the assertion," so "no reasonable factfinder could find bad faith or gross misjudgment." See C.L., 744 F.3d at 841.

Plaintiffs claim that defendants did not permit them to present evidence pertaining to the Section 504 claim, since the IHO only had jurisdiction over their IDEA cause of action. This accusation is irrelevant, as neither plaintiffs' motion for judgment on the pleadings nor their reply points to any evidence of bad faith, gross misjudgment, or deliberate indifference. Thus, even if plaintiffs are right that they were deprived of the opportunity to argue their Section 504 claim before the IHO and SRO, they had the chance to supplement the record on their Section 504 claim before this Court, thereby alleviating any prejudice. They declined that opportunity (they never sought to supplement the record) and, as already stated, their briefing papers merely assert bad faith without even alluding to any evidence of the same.[4]

Because plaintiffs have not presented any evidence that defendants acted in bad faith or with gross misjudgment, there is no basis to hold that defendants violated the Rehabilitation Act.

## III. Compensatory Education

Finally, plaintiffs claim they are entitled to compensatory education pursuant to the pendency provisions of IDEA. They argue they should receive compensation in connection with

[4] "In any action brought under this paragraph the court shall receive the records of the administrative proceedings, *shall hear additional evidence* at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C) (emphasis added); see also Mavis v. Sobol, 839 F. Supp. 968, 979 (N.D.N.Y. 1993) (permitting plaintiffs to supplement the record to present additional evidence that was not before the hearing officer); M.B. v. New York City Dep't of Educ., No. 14-cv-3455, 2015 WL 6472824, at *2 (S.D.N.Y. Oct. 27, 2015) ("The taking of additional evidence is a mater . . . left to the discretion of the trial court.").

the related services indicated by the 2017 IEP (speech-language and occupational therapy), as that was G.M.'s last agreed-upon placement and defendants were required to maintain that placement during the pendency of the IEP challenge.

"To determine a child's then-current educational placement, a court typically looks to: (1) the placement described in the child's most recently implemented IEP; (2) the operative placement actually functioning at the time when the stay put provision of the IDEA was invoked; or (3) the placement at the time of the previously implemented IEP." Doe v. E. Lyme Bd. of Educ., 790 F.3d 440, 452 (2d Cir. 2015) (cleaned up). In cases where there has been no IEP implemented, courts focus on the operative placement to determine a student's then-current educational placement, as the other methods of determining a student's then-current educational placement assume the existence of an implemented IEP. See, e.g., Avaras v. Clarkstown Cent. Sch. Dist., No. 15-cv-9679, 2018 WL 4103494, at *6 (S.D.N.Y. Aug. 28, 2018).

According to plaintiffs, the services listed in the 2017 IEP reflect the last agreed-upon placement. Although plaintiffs challenged defendants' failure to place G.M. in a specific school, they otherwise agreed with the services outlined in the IEP. Therefore, they argue that defendants were required to provide those agreed-upon services during the duration of this action. Plaintiffs also claim that the IHO and SRO erred in holding that plaintiffs can only recover compensatory education if they satisfy the Burlington/Carter test, as claims for funding pursuant to pendency placement are evaluated independently from claims for tuition reimbursement premised upon an inadequate IEP. See Mackey ex rel. Thomas M. v. Bd. of Educ. For Arlington Cent. Sch. Dist., 386 F.3d 158, 161 (2d Cir. 2004).

Defendants respond that the 2017 IEP does not reflect the last agreed-upon placement, since plaintiffs challenged it. The SRO premised its decision to deny compensatory education on

defendants' proffered grounds, holding that the IEP entitled G.M. to the related services in her IEP only if she was also placed in a Spanish special class. Because G.M. was unilaterally placed in a non-Spanish, non-special school, the SRO reasoned that she gave up her right to those other services, lest she take and leave portions of the IEP on an "*a la carte*" basis. Alternatively, if the IEP reflected the placement last agreed upon by the parties, defendants maintain that they are not required to provide the related services to plaintiffs, who seek certain portions of the IEP's listed services while ignoring others.

The Second Circuit has made clear that the stay-put rule generally does not entitle students to invoke the IDEA's stay-put provision after a unilateral placement:

> [W]hat the parent cannot do is determine that the child's pendency placement would be better provided somewhere else, enroll the child in a new school, and then invoke the stay-put provision to force the school district to pay for the new school's services on a pendency basis. To hold otherwise would turn the stay-put provision on its head, by effectively eliminating the school district's authority to determine how pendency services should be provided."

Ventura de Paulino v. New York City Dep't of Educ., 959 F.3d 519, 534 (2d Cir. 2020).[5] Defendants characterize plaintiffs as attempting to invoke the stay-put provision after a unilateral private placement, in violation of Ventura. That is, assuming the 2017 IEP was G.M.'s last agreed-upon placement, plaintiffs gave it up by placing her at NAIS.

"The idea of the 'last agreed upon' placement rests on the common-sense notion that a presumptively appropriate, interim placement for all interested parties is one that was previously acceptable to the parents and to the school district and, at least at one point, provided the child with an appropriate education." Neske v. New York City Dep't of Educ., No. 19-cv-2933, 2019

[5] There is a potential exception to this rule when "the school providing the child's pendency services is no longer available *and* the school district either refuses or fails to provide pendency services to the child." Ventura, 959 F.3d at 534 n.65 (emphasis in original). However, those circumstances are not present here and plaintiffs have not raised any argument that the exception otherwise applies.

WL 5865245, at *3 (S.D.N.Y. Nov. 7, 2019), aff'd, 824 F. App'x 81 (2d Cir. 2020). Here, the parties agree that G.M. was never placed in a school that could have provided her a FAPE, nor did defendants recommend one to her. However, there was an agreement as to a "presumptively appropriate" placement, which was the educational placement described in the IEP. See C.F., 746 F.3d at 79 ("we have interpreted the term 'educational placement' to refer to the general educational program – such as the classes, individualized attention and additional services a child will receive – rather than the 'bricks and mortar' of the specific school.") (cleaned up). Therefore, G.M.'s pendency placement was her 2017 IEP.[6]

By unilaterally placing G.M. at NAIS, plaintiffs gave up the right to require defendants to provide the related services in her IEP as a pendency placement (i.e., the right to invoke the stay-put provision). See Ventura, 959 F.3d at 534. To hold otherwise after finding plaintiffs' unilateral placement appropriate would be inconsistent. As the IHO noted, plaintiffs simultaneously argue that G.M. received an appropriate education at NAIS, meaning it sufficiently met her IEP needs, and that she is entitled to related services, meaning G.M. was deprived of them at NAIS. Both statements cannot be true at once. As I have already held, NAIS was appropriate, despite failing to formally provide the related services indicated in G.M.'s IEP. Therefore, G.M. was not deprived of the benefit of those services. Rather, she received them in a different form at NAIS, through her specialized education.

As Ventura makes clear, plaintiffs had the right to unilaterally place G.M. upon deciding that defendants' placement was inappropriate. They are entitled to reimbursement for NAIS because it was appropriate, but they cannot force defendants to provide the related services from

[6] This determination is bolstered by the fact that if the 2017 IEP were not G.M.'s pendency placement, she would have no pendency placement at all, which is "an impossible result." See Gabel ex rel. L.G. v. Bd. of Educ. of Hyde Park Cent. Sch. Dist., 368 F. Supp. 2d 313, 325 (S.D.N.Y. 2005).

her IEP at a private school of their choosing. That would deprive defendants of their "preexisting and independent authority to determine *how* to provide the most-recently-agreed-upon educational program." Id. (emphasis in original).[7] Therefore, plaintiffs are not entitled to compensatory education for the related services in G.M.'s IEP.

## CONCLUSION

Plaintiffs' motion for judgment on the pleadings is granted with respect to tuition reimbursement; defendants' motion is denied with respect to the same. Plaintiffs' motion for judgment on the pleadings is denied with respect to the Section 504 claim and compensatory education; defendants' motion is granted with respect to the same.

**SO ORDERED.**

Brian M. Cogan
U.S.D.J.

Dated: Brooklyn, New York
August 22, 2024

[7] Plaintiffs have not argued that defendants' placement was not made in "good faith," regardless of its appropriateness. See Ventura, 959 F.3d at 534. Therefore, the logic that "it is up to the school district, not the parent, to decide how to provide [an] educational program until the IEP dispute is resolved" applies. See id.